December 19, 1910.

———o———

5098.

(Court of Appeal, Parish of Orleans).

## JEANERETTE LUMBER & SHINGLE COMPANY, LIMITED vs. A. L. WEIR, ET AL.

The rule that as one binds himself he shall remain bound, may be true in mere conventional obligations; but the effect of judicial and statutory bonds must be tested by the law directing them to be taken. That which is super-added must be rejected, and that which is omitted supplied.

Appeal from the Civil District Court, Division "D."

Hall, Monroe & Lemann, for plaintiff and appellee.

Rouse, Grant & Grant, for defendant and appellant.

McCloskey & Benedict, attorneys.

ST. PAUL, J.—Act 134 of 1906 requires that, in cities of over 50,000 inhabitants, any contract amounting to $1,000 or more, for the construction or repair of any work shall be reduced to writing and recorded.

The Act further requires that:

"The owner of such work shall require of said undertaker, master, mechanic or engineer a bond with good and solvent surety for not less than one-half of the amount of the contract price, which bond shall be attached to and recorded with the contract in the mortgage office as above set forth and the condition of which bond shall be the true and faithful performance of the contract, and the payment of all sub-contractors, workmen, laborers, mechanics, and furnishers of materials by the undertaker, contractor, master mechanic or engineer, the said bond to be made in favor of the owner, sub-contractor, workmen, laborers, mechanics and furnishers of materials jointly, as their interest may appear.

The act further provides that:

"In the event the owner has a claim in concursus with other claimants who have a lien and privilege under the act, they shall be paid in preference to the owner.''

The purpose of the act is declared to be:

"To require owners to secure bond with solvent and sufficient surety from the undertaker, contractor, master mechanic or engineer for the protection of all parties interested in the contract, as their interests may appear, and which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic or engineer."

On May 5, 1909, Amos L. Weir contracted to erect a building for the Eureka Homestead Association for the sum of $8,600, all in accordance with certain specifications referred to in the contract.

Attached to the contract is a certain instrument in writing signed by Weir and the National Surety Company, and drawn up in these words to-wit.

# BOND.

"Whereas, on the 5th day of May, 1909, Amos L. Wier has entered into a contract for the construction, reconstruction, erection or repair, as fully set forth in the aforesaid building contract of said date (with which this bond is identified as part thereof), with the Eureka Homestead Society, the owner thereof; and, whereas, said owner desires to be secured in the faithful performance of the terms and obligations of said building contract by said Weir, contractor, in accordance with law, and particularly Act 134 of 1906.

"Now, therefore, said Wier, as principal, and National Surety Company of New York, as surety, bind and obligate themselves in solido, waiving benefit of discussion and division, and submitting to the jurisdiction of the Courts of Orleans Parish, in the full sum of forty-three hundred dollars, for the faithful performance of said above mentioned contract.

"The condition of the above obligation is such that, if said principal shall well and faithfully perform all the obligations assumed by him and pay all sub-contractors, workmen, laborers, mechanics and furnishers of materials, or other parties in interest, as their interest may appear, in accordance with the terms of Act 134 of 1906, then this bond shall become null and void; otherwise to remain in full force and effect."

We have given the wording of this bond in full for the purpose of pointing out the following:

1. That it recites, on the face, that it was given because the owner desired to be secured upon said contract "in accordance with law and particularly Act 134 of 1906."

2. That it is for the amount required by that statute,

to-wit: one half of the amount of the contract price.

3. That it makes no express mention of any particular obligee, principal and surety simply binding them-selves generally "for the faithful performance of said contract."

4. That the surety binds itself **in solido** with the principal "waiving benefit of discussion and division," thus binding itself, **to stand in the place and stead of said defaulting contractor.**

5. That the condition of the bond is that the principal shall well and faithfully perform all the obligations assumed by him and pay all sub-contractors, workmen, etc., "as their interest may appear, in accordance with the terms of Act 134 of 1906."

From this it appears that the bond herein furnished says in language as clear as it is possible to make it, that the owner being desirous of exacting of the contractor a bond in accordance with the requirements of Act 134 of 1906, the National Surety Company agrees to become surety on said bond and binds and obligates itself according to the terms of said act.

Even without recourse to any rule of law, the fact that the bond makes no express mention of any particular obligee, leads to the irresistible conclusion that these were left to be supplied by reference to the statute, which requires "said bond to be made in favor of the owner, sub-contractors, workmen, laborers, mechanics, and furnishers of materials," as their interests may appear, "that is a **necessary implication.**"

Otherwise the bond is worthless to anyone; for if it be permissible in a suit thereon by a sub-contractor, or workman, to deny liability because he is not mentioned therein as obligee, it is also permissible to deny liability towards the owner for the same reason.

But there is a rule of law with reference to statutory

bonds; and as we have said, this bond shows on its face that it was given in view of the statute.

> "The rule that as one binds himself he shall, remain bound, may be true in mere conventional obligations; but the effect of judicial (and statutory) bonds must be tested by the law directing them to be taken. That which is super-added must be rejected, and that which is omitted supplied, * * * See **Hennen's Digest, Vol. II, p. 1023, number 6.** (We have added the words, "and statutory," as being justified by the authorities cited in support of the text).

This disposes, we think, of the question of plaintiff's right to proceed upon this bond; plaintiff is a furnisher of materials, and as such is one of the obligees in favor of whom the act requires the bond to be made.

**Hughes vs. Smith, 114 La. 297,** has no application. In that case the bond was by express terms made in favor of the owners, and the gist of the opinion is, that even if such a bond could be considered as a bond for the joint benefit of owners, workmen, and sub-contractors, nevertheless since Act 180 of 1894 (amended by Act 123 of 1896), required that the **full amount** of the bond should inure to the benefit of workmen, sub-contractors, etc., "it is manifest that a bond where such amount is made divisible between the owners and the statutory beneficiaries does not meet the requirements of the law." Hence the suggestion in the opinion as to separate bonds, one purely statutory, the other in favor of the owner.

But Act 134 of 1906, passed after that decision, distinctly provides that the bond shall be in favor of the owner as well as the workmen and sub-contractors, but that the claims of the latter shall have priority over those of the owner.

Hence the ruling in that case has no application to the case at bar.

The only question remaining is whether plaintiff recorded its lien "within forty-five days after the completion of said contract." As required by the statute.

The lien was recorded on November 10, 1909. Defendant contends that the building was completed on September 25, 1909, or more than forty-five days previous to the recording of the lien. In support of its position it produces a certificate to that effect issued by the architect in charge and dated said day, which certificate it urges, is conclusive by virtue of the following clause in the contract between the owner and the builder:

"Should any dispute arise respecting the true construction or meaning of the drawings of specifications, the same shall be decided by Mr. A. N. Robelot, architect, * * * and his decision shall be final."

This clause clearly refers only to controversies arising between the owner and the contractor over the interpretation of the drawings and specifications, and has no possible application to any question about the completion of the contract arising between the surety and a workman, sub-contractor or material-man. Hence the certificate is not conclusive.

On the facts the case is also with plaintiff. The testimony of the architect tends to support the correctness of his certificate, but the preponderance of the evidence is to the effect that the building was not fully ready for final delivery, and that work did not cease thereon, until some time after the date of the certificate.

It was shown that the plumbing was not tested by the Sewerage Board, and hence was not ready for acceptance until the end of September; that the metallic screens which required to be fitted to the wooden doors were being installed from October 6th to October 8th; and that

hard wood floors were still being laid during the weeks ending October the 9th and October the 16th.

The witnesses who testified to these facts, also testify that whilst they were still working on the building, parties were already moving in, one of the parties being the person for whom the Homestead Association appears to have erected the building, but neither of these parties was called to rebut this testimony, which, therefore, stands practically uncontradicted.

The judgment of the district court appears to us correct and it is, therefore, affirmed.

December 19, 1910.

Rehearing refused January 23, 1911.

Writ denied by Supreme Court March 1, 1911.